# CENTRAL OF GEORGIA RAILWAY COMPANY *v.* BROWN.

1. While a carrier of passengers may not be held to so high a degree of care in the matter of providing and maintaining stational facilities as in the act of transportation, it is the duty of such carrier to use extraordinary diligence in protecting the safety of a passenger in alighting from its carriage at a place selected by it for the passenger to alight. In determining whether this degree of diligence has been exercised, the safety of such place for alighting under the circumstances may be considered with the other facts of the case.

2. The instruction relative to the diminution of damages where the plaintiff was to some extent negligent, though inaccurate, will not require a new trial under the facts of the case.

3. A ground of negligence was the alleged failure of the carrier to provide a reasonably safe place for a passenger to alight at night, without a

light, on account of the distance from the car step to the ground. It appeared in evidence that the surface of the ground where the injury was alleged to have occurred was afterwards elevated by the carrier. Under such circumstances the defendant has no real ground of complaint that the court instructed the jury that they would not be authorized to find from this act of repair "that the defendant was negligent as to the safety of the alighting place at the time of the occurrence."

4. It is not error to fail to charge that if the plaintiff and defendant are equally at fault no recovery can be had, in the absence of a pertinent written request.

5. The verdict is not excessive; it is supported by the evidence; and no sufficient reason appears for the grant of a new trial.

APRIL 18, 1914.

Action for damages. Before Judge Rawlings. Washington superior court. January 21, 1913.

*Lawton & Cunningham, Saffold & Jordan,* and *J. J. Harris,* for plaintiff in error.

*Smith & Hastings* and *Hardwick & Hyman,* contra.

EVANS, P. J. The plaintiff recovered a verdict against a railroad company for personal injuries alleged to have been caused by the defendant's negligence. He alleged that he was a passenger, and that the railroad company was negligent in furnishing him an unsafe place to alight from the train, under the circumstances set out in his petition. For a more detailed statement see the report of the case in 138 *Ga.* 107 (74 S. E. 839).

1. The court charged the jury: "You look at the facts as before said, of which you are the sole judges; and if you find from all the facts and circumstances connected with this case that the plaintiff, after purchasing a ticket at Tennille, became a passenger upon the train of the defendant company, destined for Davisboro, then I charge you that the rule of care encumbent upon the railroad as to receiving, carrying, and discharging the plaintiff in this case would be extraordinary care in maintaining, so far as his discharge is concerned, a safe place of alighting would be embraced within this rule." The criticism is, that the use of the words "a safe place of alighting" made the defendant company an insurer against damages; that the charge placed upon the defendant company a burden not required by law, as the only requirement of the law as to the place of alighting is that it should be a reasonably safe place; and that the charge was not authorized by the pleadings. With respect to the first and third criticisms of this excerpt from the charge,

it is sufficient to say that the instruction fell within the allegations of the petition, and can not be construed as imposing upon the defendant company an absolute liability as an insurer against damages arising from an injury sustained by a passenger in alighting from the train. Nor do we think that the court confused the duty which a carrier owes in furnishing stational facilities with the extraordinary diligence which a carrier is bound to exercise in receiving, transporting, and discharging its passengers. A railroad company is bound to use ordinary care in providing stational facilities for receiving and discharging passengers. This may be called the duty of preparation, to be exercised in anticipation that the carrier's invitation to the public to take passage may be accepted. After one has become a passenger the carrier is bound to use extraordinary diligence with respect to his safety, not only in his actual transportation, but also in affording him a reasonably safe opportunity of leaving the carriage. The various instrumentalities employed by the carrier, the acts and conduct of its servants, the place selected by the carrier for the passenger to alight, and the carrier's preparation for his discharge at that place, are criteria which legitimately may be considered by the jury in solving the question whether the carrier exercised extraordinary diligence in the discharge of the contract of carriage. The duty of the carrier to exercise extraordinary diligence in protecting its passengers from injury is not confined to the operation of its cars. It embraces many other acts, depending upon the circumstances of the particular case. It applies to the construction and maintenance of the tracks on which the cars are operated. *Macon etc. R. Co.* v. *Barnes,* 113 *Ga.* 212 (38 S. E. 756). We do not think the instruction to which exception is taken confused the carrier's duty in maintaining stational facilities as separate and distinct from its duty to exercise extraordinary diligence in affording passengers an opportunity to alight from its cars in safety. The reference to the maintenance of a safe place for alighting was expressly restricted to the carrier's duty in the discharge of its passengers. In other words, it was one of the criteria which the jury had a right to consider in determining whether the carrier had discharged to its passenger that degree of duty which the law exacts. *Southern Railway Co.* v. *Reeves,* 116 *Ga.* 743 (42 S. E. 1015) ; *McBride* v. *Georgia Railway & Electric Co.,* 125 *Ga.* 515 (54 S. E. 674).

2. Complaint is made of this charge: "If you find, however, as I have before instructed, gentlemen, that the plaintiff and the agents of the company were both at fault, and the plaintiff may have in some way contributed to the injury, and he could not have avoided the consequences to himself caused by the defendant's negligence if he had exercised ordinary care, then I charge you that he may recover damages of the defendant company, but the damages may be, by the jury trying this case, diminished in proportion to the amount of default attributable to him." It is contended that the court, by the use of the word "may," left it discretionary with the jury whether or not there should be a diminution of damages according to the fault of the plaintiff, whereas the law in such cases makes it mandatory that the jury shall diminish the damages in proportion to the default attributable to the plaintiff. In another portion of his charge the court instructed the jury that the damages shall be diminished in proportion to the plaintiff's default, under the circumstances referred to in the excerpt to which exception is taken. This criticism is largely verbal; and when this charge is considered in connection with its context, and its whole structure is considered, we feel satisfied that the jury were not misled with respect to the rule of law upon the subject.

3. When the case was here on a former occasion a reversal resulted from the failure of the court to give in charge to the jury a certain instruction requested by the defendant. In the trial now under review the court gave the identical instruction, though it was not again requested in writing. This instruction was cautionary in its character. It appeared from the evidence that, after the injury complained of, the defendant company had elevated the surface of the ground at the point where the plaintiff alleged he was injured in alighting from the car; and the court charged the jury that this change of the situation would not authorize an inference of the defendant's negligence as to the safety of the alighting place at the time of the occurrence. We do not see how this instruction, pertinent and legal, could be harmful to the defendant.

4. It is contended by the plaintiff in error, that, notwithstanding no written request was presented, the court erred in failing to charge the jury that if both plaintiff and defendant were equally at fault there could not be a recovery. It has been held that a failure to charge that if the negligence of the plaintiff and the defend-

ant were equal the plaintiff could not recover, in the absence of a pertinent written request to so charge, is not cause for the grant of a new trial. *Alabama Great Southern Railroad Co.* v. *Brown*, 138 *Ga.* 328 (75 S. E. 330).

5. We have carefully examined the evidence with respect to the extent and permanency of the plaintiff's injury, and we do not think that the damages awarded under the evidence were excessive. The contentions of the parties were properly stated by the court; the evidence authorized the verdict; and no reason appears why the judgment refusing a new trial should be disturbed.

*Judgment affirmed. All the Justices concur.*