59635, 59636. VEAL v. FRASER et al.; and vice versa.

Birdsong, Judge.
Denial of pension. Virgil E. Veal, Sr. has been a member of Atlanta Iron Workers, Local 387 for over forty years. Prior to 1966, the union did not have a pension fund. In 1966, the local together with a group of employers created a contributory pension plan for the benefit of the members of the local, the amount of the contribution to be based upon the number of hours worked during a pay period in

qualifying labor as an iron worker. Veal and his son had both worked for Calvert Steel for a number of years. The owner of Calvert Steel died and Veal, Sr. together with two others liquidated the Calvert Steel entity. Veal, Sr. formed Stonewall Specialty, Inc. together with his son and daughter (as well as other members of his family) in about 1963 to assume the unfinished contracts of Calvert Steel. Stonewall Specialty was a contributing employer to the Local 387 pension fund.

In order to perpetuate and protect the years of iron work membership and participation prior to the creation of the pension fund in 1966, the fund, through its trustees, provided that all years prior to 1966 during which a union member had belonged to Iron Workers Local 387 automatically vested and would be considered qualifying years for pension purposes. The only requirement necessary to protect and vest the years of service prior to 1966, was that an iron worker had to work not less than 170 hours of qualifying union employment between March 1, 1966 and February 28, 1967. To be eligible for a pension, a pensioner had to be a member of Local 387, be at least 65 years of age at the time of the retirement application, and had to have 25 or more years as an iron worker, including at least 170 hours of qualifying iron work in 1966-1967.

Veal, Sr. was a director of Stonewall Specialty and did the estimating and contract procurement for the firm. When Veal, Sr. acted in this capacity, he was not considered as working in qualifying "iron work" for purpose of accrual of pension time. During the period in question, March 1, 1966 to February 28, 1967, Stonewall Specialty made no contributions to the pension fund on behalf of Veal, Sr. for qualifying work as an iron worker, though apparently the firm did make contributions to the pension fund on behalf of other iron workers who worked for Stonewall Specialty during that same time frame. In November, 1973, Veal, Sr. made application to the trustees for a pension. At that time, Veal was 66 years of age and had over 25 years of creditable service as an iron worker. Stonewall Specialty had made contributions to the pension fund on behalf of Veal, Sr. during the years 1967-1974. The trustees of the fund recognized that Veal had accumulated over six years of pension service (1967-1973) but could find no record of qualifying service between March 1, 1966, through February 28, 1967, so as to vest all the years of past service as an iron worker and thus credit Veal, Sr. with at least the necessary 25 years of qualifying iron workers service. Following protracted discussions between Veal and his firm with the trustees and their attorney, in 1974, Veal submitted information from Stonewall Specialty through its secretary and Bookkeeper (Veal's daughter) which indicated that Veal had worked for 384 hours during the "lock-in" period and included with that record of work performed, a

pension contribution check in the amount of $38.40 ($.10 for each hour of qualifying labor). A year later, the trustees returned the check and for all practical purposes denied Veal a pension. Veal then brought this suit against the trustees seeking the pension to which he asserts he is entitled.

During the trial of the issue, while on cross examination, Mr. Veal estimated that he probably had worked about 300 hours as an iron worker in qualifying work between March 1, 1966 and February 28, 1967. Veal admitted that at most he could only guess at the number of hours he might have worked in qualifying labor. The trial court sustained an objection to any evidence of guesswork. An attempt to corroborate the time worked as an iron worker by a fellow worker also resulted in testimony of a guess. The pay records of Stonewall Specialty reflected that Veal, Sr. drew an executive salary throughout the period. Testimony of the bookkeeper indicated that the firm had two foremen, Veal, Sr. and his son, Veal, Jr. Each drew executive salary throughout the year. Whenever either worked as an iron man (and thus the firm was required to make a contribution to the apprentice, welfare or pension funds of the local based upon qualifying union work), either the daughter (bookkeeper) knew that union labor was involved or her father or brother informed her that part of the labor was to be charged as union work rather than as executive salary. In the absence of such information, no entry of union work was made. At the conclusion of the evidence on behalf of the plaintiff below, Veal, Sr., the trial court directed a verdict on behalf of the trustees on the ground that Veal had not met his burden of showing that he was eligible to receive a pension. Veal filed an appeal (No. 59636) enumerating six alleged errors. The trustees have filed a cross appeal (Case No. 59635) asserting five alleged errors. *Held:*

1. In a pretrial order, the trial court placed the burden of establishing eligibility for a pension upon the plaintiff-appellant Veal. The court put the burden of showing that Veal did not have the minimum of 170 qualifying iron worker hours during 1966-1967 upon the defendant appellee trustees. When ruling upon the motion for directed verdict made by the trustees, the trial court considered a federal court case, Bueneman v. Central States, Southeast & Southwest Areas Pension Fund, 572 F2d 1208 (8th Cir. 1978). The trial court ruled that the trustees had not acted in an arbitrary or capricious way when it concluded that Veal had not furnished sufficient evidence that he had worked for at least 170 hours in qualifying service as an iron man during the period from 1966-1967. From this oral ruling, Veal now argues that by effectively requiring him to show that the trustees acted in an arbitrary and capricious

manner in denying him a pension, the trial court erroneously changed the burden of proof, modified the pretrial order without notice to Veal and applied improperly the standards imposed by the federal case, thus misconstruing or failing to consider applicable Georgia law concerning trusts and pensions. Generally, the same objections were made to the trial court by way of exceptions to the ruling on the motion. The trial court at that time informed counsel for Veal that the affirmative reason the motion was granted was because Veal had not met his burden of proving eligibility. The trial court also observed that the standards imposed upon the trustees when considering the granting or denying of a pension (based upon whatever grounds) required the trustees not to act in an arbitrary or capricious manner, which in fact are the standards established by the Bueneman case. The court further stated that it did not consider the conclusion of the trustees, on the basis of the evidence submitted to the trustees (and before the court on trial), that Veal had not shown eligibility, to be either arbitrary or capricious.

As we construe the preceding oral statements of the trial court, in essence the court concluded on the basis of the evidence that Veal had not shown by competent evidence that he (Veal) was eligible for a pension because Veal had not shown by competent evidence that he worked in qualifying work for 170 hours during the "lock-in" period. The trial court then incidentally concluded that the trustees had not acted in an arbitrary or capricious way when they concluded that Veal had shown no record of working 170 hours during 1966-1967 in qualifying work. We reject as illogical distortions the contentions by Veal that the trial court had changed the pre-trial order, the burden of proof, or misconstrued Georgia law by adopting the federal standard. These enumerations are without substantial merit.

2. Veal contends also that the direction of the verdict was contrary to the evidence. The only evidence offered to show eligibility was the statement by Veal that he had worked for sometime in St. Louis in iron work and for a period of time in Atlanta. It is conceded apparently that the St. Louis iron work is not qualifying work as to Atlanta Local 387. As to the Atlanta work, Veal estimated at least 300 hours in iron work, but he could not recall the time frame that the work had been performed except in a very general way. He could not give specific days or hours worked. The records, which would have reflected what hours had been worked in executive supervision and what hours were in iron work, reflected that Veal was paid for executive work only. The records of the local recording pension contributions did not indicate any qualifying work. The corroborating witness likewise could not give specific times or dates or hours. In short, the testimony offered by Veal was confusing and

contradictory. The law in this state is that the testimony of a party offering himself as a witness in his own behalf is to be construed most strongly against him when it is contradictory, vague or equivocal (*Davis v. Akridge,* 199 Ga. 867 (2) (36 SE2d 102)); even as against a directed judgment, *Lewis v. Dan Vaden Chevrolet,* 142 Ga. App. 725, 728 (236 SE2d 866); *Johnson v. Curenton,* 127 Ga. App. 687, 690 (195 SE2d 279)), and that construction most unfavorable to his position should generally be adopted. *Lorance v. Lorance,* 216 Ga. 754, 755 (119 SE2d 342). If that most unfavorable position shows that the party is not entitled to prevail, unless other evidence shows compellingly that he should prevail, he must lose. *Douglas v. Sumner,* 213 Ga. 82 (3) (97 SE2d 122). This transcript does not present countervailing evidence, independent of that delineated, which would permit Veal to prevail. Under the facts presented to the trial court and the jury, the verdict for the trustees was proper in the absence of competent evidence of eligibility of Veal for a pension. See *Johnson v. Mann,* 132 Ga. App. 169 (207 SE2d 663); *State Farm Mut. Auto Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878). This enumeration is without merit.

3. In his final enumeration of error, Veal complains that the trial court erred in allowing the trustees to implead Stonewall Specialty as a third party defendant over two years after the initial complaint was filed. Veal does not complain that the action is barred by limitations or that other procedural error is involved in the adding of the third party complaint but that the delay caused justice to be delayed. The purpose of impleading Stonewall Specialty as a third party defendant was to indemnify the trustees should Veal prevail in his claim for a pension. Veal did not prevail as against the trustees. We fail to see how justice has been delayed or that Veal has been harmed in any way. It is an old and sound rule that even assuming error, that error, to be reversible, must be harmful. *First Nat. Bank v. American Sugar Refining Co.,* 120 Ga. 717 (48 SE 326); *Burger Chef Systems v. Newton,* 126 Ga. App. 636, 639 (191 SE2d 479). This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party. *Brown v. City of Atlanta,* 66 Ga. 71. This enumeration lacks merit.

In Case No. 59635, the trustees in their cross appeal acknowledge that though they have won the litigation, they find error in the predicate for the judgment as relied upon by the trial court. As indicated in their brief, as a precaution, they have filed this cross appeal. Only one who has been harmed is in a position to complain of an error, *Travelers Indem. Co. v. Cumbie,* 128 Ga. App. 723, 726 (197 SE2d 783), and where as here, the judgment is in favor of the

defendant, the basis of that favorable judgment does not amount to harmful error as a matter of law. *Pilkenton v. Eubanks,* 139 Ga. App. 673, 675 (229 SE2d 146); *Howard v. Gardner,* 128 Ga. App. 545, 546 (2) (197 SE2d 386). The basis for the appeal by the trustees was that the trial court should have considered the complaint as one in equity so as to consider the allegations of the defendants; that the court applied the wrong legal standards, that the case should not have been accepted as one sounding in declaratory judgment and that as an equity case, the court should not have authorized a jury trial. Each of these enumerations we are convinced has been rendered moot and non-harmful, even assuming merit to any one of them, by the rendition of a verdict for the trustees. Thus, we find each of those enumerations to be without foundation.

*Judgments affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED MARCH 6, 1980 — DECIDED JUNE 17, 1980 —
REHEARING DENIED JULY 3, 1980 IN CASE NO. 59635 —

*Gregory W. Sturgeon,* for appellant.
*Joseph Jacobs, James T. Langford,* for appellees.